Jean-Paul Ciardullo (CA Bar No. 284170)
   jciardullo@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2418
Telephone:  213.972.4500
Facsimile:   213.486.0065

Michael D. Kaminski (*Pro Hac Vice* Pending)
   mkaminski@foley.com
Liane M. Peterson (*Pro Hac Vice* Pending)
   lpeterson@foley.com
Bradley D. Roush (*Pro Hac Vice* Pending)
   broush@foley.com
**FOLEY & LARDNER LLP**
3000 K Street, N.W., Suite 600
Washington, D.C.  20007-5143
Telephone: 202.672.5300
Facsimile:  202.672.5399

*Attorneys for Defendants*
*Far Eastern New Century Corporation*
*and Multi-Plastics, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SK MICROWORKS AMERICA, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> FAR EASTERN NEW CENTURY CORPORATION, and MULTI-PLASTICS, INC., <br><br> *Defendants*. | Case No.: 2:23-CV-10322 JAK-ADS <br><br> **DEFENDANTS' NOTICE OF MOTION AND RULE 12(b)(6) MOTION TO DISMISS** <br><br> Date:          June 17, 2024 <br> Time:         8:30 a.m. <br> Courtroom:  First Street, 10C |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 17, 2024, at 8:30 a.m., or as soon as this matter may be heard in Courtroom 10C before the Honorable John A. Kronstadt, of the above-entitled Court located at First Street Courthouse, 350 W. First Street, Courtroom 10C, Los Angeles, California 90012, Defendants Far Eastern New Century Corporation ("FENC") and Multi-Plastics, Inc. ("MP") hereby move to dismiss the Complaint because (1) each asserted claim of the patents-in-suit is invalid as a matter of law under 35 U.S.C. §101 for claiming patent-ineligible subject matter and (2) the Complaint fails to adequately allege both direct and indirect infringement in Counts III-VIII and XI-XIII.

This motion is made pursuant to Fed. R. Civ. P. 12(b)(6) and the Local Rules applicable thereto. This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the pleadings on file in this action, and on such other written or oral argument or evidence as may be presented at or before the time this motion is taken under submission.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 15, 2024.

Dated:  April 24, 2024

Respectfully Submitted,

/s/ *Jean-Paul Ciardullo*
Jean-Paul Ciardullo
FOLEY & LARDNER LLP

i

4860-1336-9778.9

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ................................................................................................3

    A.     Complaint .................................................................................................3

    B.     Patents-in-Suit .........................................................................................3

III.    LEGAL STANDARD ......................................................................................11

IV.     THE ASSERTED CLAIMS LACK PATENT-ELIGIBLE MATTER..................12

    A.     *Mayo/Alice* Step One: The Asserted Claims Are Directed to the Claimed Heat-Shrinkage, Clumping Fraction, and Discoloration Properties.................................................................................................12

        1.     The Focus of the Asserted Claims Are the Claimed Properties. ........12

        2.     The Claimed Properties Are Purely Result-Oriented Abstract Ideas. ....................................................................................................14

        3.     Unclaimed Technical Details Found in the Specifications of the Patents-in-Suit Cannot Confer Patent Eligibility...............................16

    B.     *Mayo/Alice* Step Two: The Asserted Claims Recite Only Conventional Heat-Shrinkable Polyester Films and Regeneration Processes Without Providing an Inventive Concept. ....................................17

V.      THE COMPLAINT FAILS TO ALLEGE INFRINGEMENT OF THE '435, '691, AND '898 PATENTS. ..........................................................................18

    A.     The Complaint Alleges that Third Parties Are the Only Direct Infringers of the '435, '691, and '898 Patents. ..............................................19

    B.     The Complaint Does Not Allege Sufficient Facts About the Purported Third-Party Direct Infringement of the '435, '691, and '898 Patents. .........20

    C.     The Complaint Fails to Allege that Either Defendant Induced Infringement of the '435, '691, and '898 Patents. .........................................21

    D.     The Complaint Fails to Allege that Defendants Contributorily Infringe the '435, '691, and '898 Patents....................................................................21

VI.     CONCLUSION................................................................................................22

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018) ......................................................................... 18

*AI Visualize, Inc. v. Nuance Commn'cs., Inc.*,
    -- F.4th --, 2024 WL 1449801 (Fed. Cir. 2024) ........................................ 1, 13

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ................................................................................. 12, 17

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
    966 F.3d 1347 (Fed. Cir. 2020) ......................................................................... 16

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
    967 F.3d 1285 (Fed. Cir. 2020) .................................................................. passim

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................ 11

*Ass'n for Molecular Pathology v. Myriad Genetics*,
    569 U.S. 576 (2013) ........................................................................................... 12

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) .......................................................................... 18

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
    935 F.3d 1341 (Fed. Cir. 2019) ......................................................................... 13

*ChargePoint, Inc. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) ............................................................... 12, 17, 18

*Corning v. Burden*,
    56 U.S. 252 (1853) ............................................................................................... 2

*Discflo Corp. v. American Process Equip., Inc.*,
    No. 11cv00476, 2011 WL 6888542 (S.D. Cal. Dec. 29, 2011) ...................... 22

*In re Bill of Lading Transmission & Processing Sys. Pat. Lit.*,
    681 F.3d 1323 (Fed. Cir. 2012) ......................................................................... 20

ii

*In re Killian*,
    45 F.4th 1373 (Fed. Cir. 2022) ..................................................................14

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017)..................................................................18

*Irori Technologies, Inc. v. Luminex Corp.*,
    No. 13-CV-2647, 2014 WL 769435 (S.D. Cal. Feb. 25, 2014)....................20

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012) ....................................................................................13

*North Atlantic Imports, LLC v. NexGrill Indus., Inc.*,
    CV 19-01195, 2020 WL 1042209 (C.D. Cal. Jan. 23, 2020) ......................12

*Pulse Elecs. v. U.D. Elec. Corp.*,
    No. 18-cv-0373, 2020 WL 3791660 (S.D. Cal. July 6, 2020).....................21

*PureCircle USA Inc. v. SweeGen, Inc.*,
    No. 2022-1946, 2024 WL 20567 (Fed. Cir. Jan. 2, 2024)....................14, 15

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)..................................................................12

*Sonos, Inc. v. Google LLC*,
    591 F.Supp.3d 638 (N.D. Cal. 2022) .........................................................22

*Superior Indus., LLC v. Thor Global Entesr. Ltd.*,
    700 F.3d 1287 (Fed. Cir. 2012)..................................................................21

*U.S. Ethernet Innovations, LLC v. Netgear, Inc.*,
    No. 13-2262, 2013 WL 4112601 (N.D. Cal. Aug. 12, 2013) ......................21

**Statutes**

35 U.S.C. §101 ................................................................................................i, 1

**Rules**

Fed. R. Civ. P. 12(b)(6)...................................................................................i, 1

4860-1336-9778.9

## I.   __INTRODUCTION__

In its Complaint, Plaintiff SK Microworks America, Inc. ("SKM") alleges that Defendants Far Eastern New Century Corporation ("FENC") and Multi-Plastics, Inc. ("MP") (collectively, "Defendants") infringe U.S. Patent Nos. 9,574,047 ("'047 patent"), 8,632,865 ("'865 patent"), 11,008,435 ("'435 patent"), 11,155,691 ("'691 patent"), 11,655,062 ("'062 patent"), 10,800,897 ("'897 patent"), and 10,800,898 ("'898 patent"). The Patents-in-Suit broadly describe heat-shrinkable polyester films that purportedly help improve the recyclability or regeneration of polyester containers (e.g., water bottles). The Complaint also alleges that certain of Defendants' heat-shrinkable polyester films infringe the Asserted Claims.[1]   However, the Complaint should be dismissed under Federal Rule 12(b)(6) for two separate reasons.

First, each Asserted Claim is patent-ineligible under 35 U.S.C. §101 for the same reason: the purported claimed advances of the Asserted Claims over the prior art are functional results—the claimed heat-shrinkage, clumping fraction, and discoloration properties—and the Asserted Claims do not recite specific compositions or processes for achieving such results.   To be patent-eligible, a claim "must go beyond stating a functional result; it must identify 'how' that functional result is achieved by limiting the claim scope to structures specified at some level of concreteness." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1302 (Fed. Cir. 2020) ("*Am. Axle I*").   While the Asserted Claims recite structural features such as heat-shrinkable films and polyester containers, such features are entirely conventional and irrelevant to the patent-eligibility analysis.   *See AI Visualize, Inc. v. Nuance Commn'cs., Inc.*, -- F.4th --, 2024 WL 1449801, at *4 (Fed. Cir. 2024) ("We determine if the claim's character as a whole is directed to ineligible subject matter by considering the claim limitations that are purported to describe the claimed advance over the prior art.").   Instead, the purportedly inventive aspects of the Asserted Claims are the claimed heat-shrinkage, clumping

---

[1] The Complaint asserts only claim 1 of each patent.

1

fraction, and discoloration properties—which are functional results of unclaimed features. *See id.* at 1296 ("'[i]t is for the discovery or invention of some practicable method or means of producing a beneficial result or effect, that a patent is granted, and not for the result or effect itself'" (quoting *Corning v. Burden*, 56 U.S. 252, 268 (1853))). Moreover, because the purportedly inventive aspects of the Asserted Claims are the abstract, functional results themselves, there is nothing in the claims that could supply an inventive concept. Accordingly, the Asserted Claims are directed to patent-ineligible matter and this case should be dismissed in its entirety.

Second, alternatively, the Complaint's boilerplate infringement allegations for the '435, '691, and '898 patents against Defendants should be dismissed (Counts III-VIII, and XI-XII). While the specifications of the '435, '691, and '898 patents focus on heat-shrinkable polyester films, each Asserted Claim in these patents claims either a plastic container having certain properties when regenerated or a process for regenerating a polyester container that utilizes a heat-shrinkable polyester film. However, the Complaint does not allege that Defendants make such containers or utilize such regeneration processes. Instead, the Complaint alleges that Defendants distribute the accused films to customers that use the films as packaging material which can be applied to containers. (ECF 1, ¶¶27, 29.)

The Complaint accuses both Defendants of directly infringing the '435, '691, and '898 patents. However, as best understood, the direct infringement allegations for the '435, '691, and '898 patents appear to have been included by mistake as the claim charts attached to the Complaint allege only that Defendants "actively encourage, aid, and instruct their customers" to infringe these patents. Thus, Counts III, VI, and XI (which are premised on a theory of direct infringement) should be dismissed.

Further, while the Complaint alleges that Defendants' "customers" infringe these patents, the Complaint fails to state a claim for induced or contributory infringement. Because the Complaint fails to identify or plead any specific facts about Defendants' customers or their plastic containers and regeneration processes that are allegedly

2

infringing the '435, '691, and '898 patents, the Complaint does not allege an act of direct infringement by Defendants' customers.  Nor does the Complaint plead facts showing how Defendants allegedly encourage such infringement (which is necessary to show induced infringement) or how Defendants' accused films are especially made and adapted for the claimed regeneration processes and lack substantial non-infringing uses (which are necessary to show contributory infringement).  Thus, Counts IV-V, VII-VIII, and XII-XIII (which are premised on theories of induced and contributory infringement) should be dismissed.

## II.  <u>BACKGROUND</u>

### A.  **Complaint**

SKM and FENC are competitors in the heat-shrinkable film industry.  Both companies manufacture heat-shrinkable polyester films that can be used "as packaging material, which can be applied to various shapes of bottles and containers that infringe one or more claims of the Patents-in-Suit."  (ECF 1, ¶27.)  SKM alleges that FENC distributes the accused heat-shrinkable films to MP, and that MP "then distributes and/or otherwise provides the Accused Heat-Shrinkable Film Products to customers within the United States."  (*Id.*, ¶29.)

### B.  **Patents-in-Suit**

#### 1.  <u>The '865 Patent</u>

The '865 patent discloses that its "invention relates to a heat-shrinkable polyester film useful for a wrapping material, more particularly suitable for labeling a container due to its good finished appearance after shrinkage."  (ECF 1-2 Ex. 2, 1:5-8.)  "Heat-shrinkable films which undergo shrinkage back to the pre-drawn form when heated at a predetermined temperature have been extensively used for labeling a glass or plastic bottle because of its properties that are suitable for printing various articles to attract consumers' attention and for full-wrapping various containers as well as packaging a bundle of goods."  (*Id.*, 1:12-17.)  Prior to the development of heat-shrinkable polyester films, "[h]eat-shrinkable films [were] made of soft polyvinyl chloride (PVC)."  (*Id.*, 1:18-

3

19.)  However, such films are "disfavored because they exhibit a limited maximum heat-shrinkage ratio and emit toxic pollutants."  (*Id.*, 1:19-21.)

The '865 patent discloses that in response to such problems, "[h]eat-shrinkable polyester films which have improved shrinking properties and heat-resistance as compared with those of PVC and OPS films [were] developed for wrapping a glass bottle" (*id.*, 1:28-30), but that "the shrinkage rates" and "the shrinkage stress" of such polyester films are "unacceptably high."  (*Id.*, 1:30-40.)  The '865 patent further discloses that the prior art previously solved these problems:

> In order to solve the above problems, Korean Patent Laid-Open Publication No. 2002-0063158 discloses a copolymer composition comprising terephthalic acid, ethylene glycol, 1,4-cyclohexanedimethanol, and diethylene glycol, and a heat-shrinkable film prepared using the same which has a high softness and a PVC-like shrinking property; and Korean Patent Laid-Open Publication No. 2002-0062838 discloses a heat-shrinkable polyester film comprising a polyester elastomer in an amount of 5 wt % or more.

(*Id.*, 1:41-48.)  The '865 patent then explains that such films have "short comings," including "skirt performance" issues, "non-uniform heat-shrinkage," and "crinkling," that prevent their use with commercial products.  (*Id.*, 1:49-62.)

To purportedly overcome such short-comings, the '865 patent discloses that the purportedly novel heat-shrinkable polyester film "has improved performance characteristics" and "has a relatively constant heat-shrinkage change over temperature." (*Id.*, 2:28-31.)  In describing these characteristics, the '865 patent states that "[t]he heat-treatment process is preferable in terms of a constant shrinkage rate, a high heat-shrinkage ratio of the obtained film, a low shrink stress, and a low skirt ratio." (*Id.*, 4:41-43.)  The '865 patent further explains that the purportedly inventive "[c]opolyester resins were prepared . . . by using a standard preparation method of copolyester which is conventionally used and well-known in the technical field of the present invention (e.g.,

4

Examples 1 to 7 of Korean Patent No. 10-0987065)."  (*Id.*, 4:51-56.)

Claim 1 of the '865 patent recites several heat-shrinkage limitations along with a conventional polyester film:

A heat-shrinkable polyester film having a heat-shrinkage change per degree Celsius (%/° C.) along the main shrinkage direction of 1.5 to 3.0 in the range of 60° C. to 70° C., 2.5 to 3.5 in the range of 70° C. to 80° C., 1.0 to 2.0 in the range of 80° C. to 90° C., and 0.1 to 1.0 in the range of 90° C. to 100° C.,

wherein the heat-shrinkable polyester film is prepared by using a copolyester composition comprising:

(i) a dibasic acid component comprising at least 90 mol % of terephthalic acid residue based on 100 mol % of the dibasic acid component; and

(ii) a diol component comprising (a) 1 to 20 mol % of diethylene glycol, (b) 5 to 30 mol % of neopentyl glycol, and (c) 50 to 90 mol % of ethylene glycol, based on 100 mol % of the diol component.

2.    The '047 Patent

Like the '865 patent, the '047 patent discloses that it "relates to a heat-shrinkable polyester film which is useful as an outer packaging material and the like, and, more particularly, to a heat-shrinkable polyester film which is useful as a label for a high-density polyethylene (HDPE) container."  (ECF 1-1 Ex. 1, 1:5-8.)  The '047 patent discloses that "[a] heat-shrinkable film is referred to as a film which is contracted to an original state at a predetermined temperature or more after being stretched and oriented, and is used in packaging various shapes of containers."  (*Id.*, 1:22-25.)  The '047 patent further discloses that when a conventional heat-shrinkable polyester film is used with a HDPE container, the film has "lo[o]se adhesivity" to the HDPE container and that, thus, "it is required to develop a novel heat-shrinkable polyester film having excellent adhesivity when applied to a HDPE container."  (*Id.*, 1:35-40.)  The '047 patent purports to have invented "a heat-shrinkable polyester film which is suitable for use as a label for

5

a high-density polyethylene (HDPE) container." (*Id.*, 1:47-49.)

The '047 patent explains that the composition of the film used in its embodiments is conventional. Specifically, the '047 patent explains that "the polymerization reaction conditions and other process conditions were set in accordance with standard preparation methods for polyester film commonly known and used in the art." (*Id.*, 3:43-46.)

Similar to Claim 1 of the '865 patent, Claim 1 of the '047 patent recites several heat-shrinkage rates along with a conventional polyester film:

A heat-shrinkable polyester film having a heat shrinkage initiation temperature of 60° C. or lower, a glass transition temperature (Tg) of 77° C. or lower and a *heat shrinkage rate of 2% or more at 60° C.*,

wherein the film has a *heat shrinkage rate of 15% or more at 65° C., 42% or more at 70° C., and 70% or more at 80° C.*;

wherein the film is prepared by random-copolymerization of one kind of a dibasic acid component with three kinds of diol components;

wherein the dibasic acid component (A1) is one of terephthalic acid and dimethyl terephthalate; and

wherein the diol components are (B1) ethylene glycol, (B2) one of neopentyl glycol and cyclohexanedimethanol, and (B3) a linear diol component having three or more carbon atoms at a main chain thereof.

3.    The '062 Patent

The embodiments of the '062 patent "relate to a heat shrinkable film, which has a low heat shrinkage rate in the direction perpendicular to the main shrinkage direction, the heat shrinkage rate being not high even at a high temperature of 70° C. or higher, and which is printable thereon, and a process for preparing the same." (ECF 1-5 Ex. 5, 1:16-21.) The '062 patent explains that "there has been a demand for a polyester-based heat shrinkable film, which has a heat shrinkage rate in the direction perpendicular to the main shrinkage direction that is not high even at a high temperature." (*Id.*, 1:55-58.) The '062 patent purports to claim a "solution" to this demand.

6

Claim 1 of the '062 patent claims "heat shrinkage characteristics" along with a conventional polyester film:

A heat shrinkable film, which comprises a polyester resin,

wherein heat shrinkage characteristics of the heat shrinkable film in a direction perpendicular to a main shrinkage direction satisfy the following Relationships 1 and 2:

$-15 \leq \Delta T_{70\text{-}65} \leq 0$      [Relationship 1]

$0 \leq \Delta T_{100\text{-}95} \leq 5$      [Relationship 2]

wherein $\Delta T_{X\text{-}Y}$ is a value obtained by subtracting a heat shrinkage rate of the heat shrinkable film in the direction perpendicular to the main shrinkage direction after the heat shrinkable film is immersed in a water bath for 10 seconds at $Y°$ C. from a heat shrinkage rate of the heat shrinkable film in the direction perpendicular to the main shrinkage direction after the heat shrinkable film is immersed in a water bath for 10 seconds at $X°$ C.;

wherein the polyester resin comprises a dicarboxylic acid component and a diol component;

wherein the diol component comprises neopentyl glycol in an amount of 10 to 30 mol % based on a total number of moles of the diol component; and

wherein a heat of crystallization ($\Delta Hc$) measured by differential scanning calorimetry (DSC) of the heat shrinkable film is 0 to 30 J/g.

4.   The '897, '898, and '435 Patents

The '897, '898, and '435 patents share a common specification and disclose that its "[e]mbodiments relate to a heat shrinkable film and a process for regenerating a polyester container using same, which not only solve the environmental problems by improving the recyclability of the polyester container, but also are capable of enhancing the yield and productivity." (ECF 1-6 Ex. 6, 1:12-16.[2])  The patents explain that, in general, when a

[2] Citations are made only to the '897 patent.

7

polyester container with a label made from a heat-shrinkable polyester film is recycled, it "is washed and crushed" and "then subjected to liquid specific gravity separation, dehydration, drying, and/or wind specific gravity separation in order to remove a large amount of films contained in the crushed product and then to such an additional step as pelletization to obtain regenerated chips." (*Id.*, 1:31-36.)  However, this process has "a disadvantage in that the regenerated chips are colored or clumped during the thermal treatment of the regenerated chips due to the inks and the films that have not been removed even after the above steps" and "in order to increase the regeneration rate of containers, it is important to prevent inks and films from being adulterated in the regenerated chips." (*Id.*, 1:37-43.)  The patents further explain that "[t]he heat shrinkable film according to an embodiment improves the recyclability of a polyester container, thereby solving the environmental problems and enhancing the yield and productivity." (*Id.*, 2:27-30.)

The '897, '898, and '435 patents further disclose a process for recycling or regenerating a polyester container.  This process has three steps: (1) preparing a polyester container with a heat-shrinkable film; (2) crushing the container to obtain flakes; and (3) thermally treating the flakes to produce regenerated polyester chips.  (*Id.*, 7:4-10.)



Fig. 1

(*Id.*, Fig. 1.)  The patents also explain that "the clumping fraction can be measured as a percentage of the aggregate content based on the thermally treated flakes" and that "the

8

higher the value of the crumbling fraction is, the more the first flakes and the second flakes are entangled together to lower the quality of the regenerated chips." (*Id.*, 8:36-42.)

The Asserted Claims of the '897, '898, and '435 patents are directed to heat-shrinkable polyester films and the regeneration process that utilizes such films. Claim 1 of the '897 patent is directed to a heat-shrinkable polyester film with a particular heat-shrinkage rate:

> A heat shrinkable film, which comprises a copolymerized polyester resin comprising a diol component and a dicarboxylic acid component and
>
> has a heat shrinkage rate of 30% or more in the main shrinkage direction upon thermal treatment at a temperature of 80° C. for 10 seconds and
>
> a melting point of 190° C. or higher as measured by differential scanning calorimetry.

Claim 1 of the '898 patent is directed to a regeneration process for a conventional "polyester container" wherein the polyester container has a particular clumping fraction.

> A process for regenerating a polyester container, which comprises preparing the polyester container provided with a heat shrinkable film comprising a copolymerized polyester resin comprising a diol component and a dicarboxylic acid component;
>
> crushing the container provided with the heat shrinkable film to obtain flakes; and
>
> thermally treating the flakes to produce regenerated polyester chips, wherein when the flakes are thermally treated at a temperature of 200° C. to 220° C. for 60 minutes to 120 minutes, *the clumping fraction is 5% or less*; and
>
> the flakes comprise first flakes obtained by crushing the container and second flakes obtained by crushing the heat shrinkable film.

Claim 1 of the '435 patent is directed to a "plastic container" that includes a conventional

9

"polyester container" and a "heat-shrinkable film" wherein the container and film have particular clumping fractions and heat-shrinkage rates:

A plastic container comprising:

a polyester container, and

a heat shrinkable film, which is provided at the polyester container;

wherein the heat shrinkable film is shrunk by steam or hot air to wrap the outer surface of the polyester container,

wherein the heat shrinkable film comprises a copolymerized polyester resin comprising a diol component and a dicarboxylic acid component and

has a heat shrinkage rate of 30% or more in the main shrinkage direction upon thermal treatment at a temperature of 80° C. for 10 seconds and

a melting point of 190° C. or higher as measured by differential scanning calorimetry,

wherein when a plurality of flakes are thermally treated at a temperature of 200° C. to 220° C. for 60 minutes to 120 minutes, *the clumping fraction is 5% or less*,

wherein the flakes comprise first flakes obtained by crushing the container and second flakes obtained by crushing the heat shrinkable film.

     5.   <u>The '691 Patent</u>

Similar to the '897, '898, and '435 patents, the '691 patent discloses that its "[e]mbodiments relate to a process for regenerating a polyester container and a polyester film to be used therein, which not only solve the environmental problems by improving the recyclability of polyester containers, but also are capable of enhancing the quality, yield, and productivity thereof." (ECF 1-4 Ex. 4, 1:7-11.) The '691 patent further discloses that its embodiment "does not require a separate step of separating a polyester container and a film" and "improves the recyclability of a polyester container." (*Id.*, 2:27-34.)

The '691 patent later discloses that its embodiment uses a three-step process

10

similar to that disclosed by the '897, '898, and '435 patents. (*Id.*, 3:10-4:27.) Like the '897, '898, and '435 patents, the '691 patent also explains that "the higher the value of the crumbling fraction is, the more the first flakes and the second flakes are entangled together to lower the quality of the regenerated chips." (*Id.*, 4:3-5.) The '691 patent further discloses that its embodiment may prevent "discoloration of the regenerated polyester chips." (*Id.*, 8:4-8.)

Claim 1 of the '691 patent is directed to a regeneration process for a conventional polyester container with a heat-shrunken polyester film wherein the process achieves a low clumping fraction and low discoloration.

A process for regenerating a polyester container, which comprises:

providing the polyester container and a heat-shrunken polyester film that wraps at least part of the polyester container;

crushing the polyester container and the heat-shrunken polyester film to obtain flakes; and

thermally treating the flakes to produce regenerated polyester chips,

wherein when the flakes are thermally treated at a temperature of 200° C. to 220° C. for 60 minutes to 120 minutes, *the clumping fraction is 9% or less*,

the flakes comprise first flakes obtained by crushing the container and second flakes obtained by crushing the heat-shrunken polyester film,

the heat-shrunken polyester film comprises a copolymerized polyester resin comprising a diol component and a dicarboxylic acid component, and

the amount of change in Col-a ($\Delta$a) before and after the heat-shrunken polyester film is dried at 210° C. for 90 minutes is 1.50 or less, or the amount of change in Col-b ($\Delta$b) before and after the film is dried at 210° C. for 90 minutes is 1.50 or less.

## III.  **LEGAL STANDARD**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

11

*v. Iqbal*, 556 U.S. 662, 678 (2009).  "A court may dismiss a claim under Rule 12(b)(6) based on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *North Atlantic Imports, LLC v. NexGrill Indus., Inc.*, CV 19-01195, 2020 WL 1042209, at *1 (C.D. Cal. Jan. 23, 2020).

## IV.    THE ASSERTED CLAIMS LACK PATENT-ELIGIBLE MATTER

"Section 101 provides that 'any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof' may be eligible to obtain a patent."  *Am. Axle I*, 967 F.3d at 1292.  However, "§101 contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable" and that "without this exception, there would be considerable danger that the grant of patents would 'tie up' the use of such tools and thereby 'inhibit future innovation premised upon them.'"  *Id.* (quoting *Ass'n for Molecular Pathology v. Myriad Genetics*, 569 U.S. 576, 589 (2013)).  Patent-eligibility under §101 is a threshold "question of law" that is "frequently . . . resolved on a Rule 12(b)(6) . . . motion."  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *see also, e.g.*, *ChargePoint, Inc. SemaConnect, Inc.*, 920 F.3d 759, 774-76 (Fed. Cir. 2019) (12(b)(6) dismissal).

Patent eligibility is governed by the Supreme Court's two-step test established in *Mayo* and *Alice*.  Step one "ask[s] whether the claims are directed to a law of nature, natural phenomenon, or abstract idea."  *Am. Axle I*, 967 F.3d at 1292.  If the claims are directed to a patent-ineligible concept, step two "ask[s] whether the claims embody some 'inventive concept'—i.e., whether the claims contain 'an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'"  *Id.* (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-218 (2014)).

### A.    *Mayo/Alice* Step One: The Asserted Claims Are Directed to the Claimed Heat-Shrinkage, Clumping Fraction, and Discoloration Properties.

#### 1.    The Focus of the Asserted Claims Are the Claimed Properties.

At step one, the court must "look at the focus of the claimed advance over the prior

12

art to determine if the claim's character as a whole is directed to excluded subject matter." *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346 (Fed. Cir. 2019); *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 82 (2012) ("[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable."); *AI Visualize*, 2024 WL 1449801, at *4. Here, the only *claimed* advances over the prior art recited in the Asserted Claims are the claimed heat shrinkage, clumping fraction, and discoloration properties.

While each Asserted Claim requires a heat-shrinkable polyester film, the claimed films are described by the Asserted Patents as being conventional. The '865 patent explains that the claimed film was prepared "by using a standard preparation method of copolyester which is *conventionally* used *and well-known in the technical field* of the present invention." (ECF 1-2 Ex. 2, 4:51-56.) The '047 patent explains that "[i]n this process, the polymerization reaction conditions and other process conditions were set in accordance with *standard preparation methods for polyester film commonly known and used in the art*." (ECF 1-1 Ex. 1, 3:43-46.) The claimed films of the remaining patents—which were filed years after the '865 and '047 patents—recite similarly generic films. Instead, the claimed advance over the prior art for these claims are the claimed heat-shrinkage properties.

Further, the polyester containers and regeneration processes claimed by the '898, '435, and '691 patents are described in similarly conventional terms. Each of these claims recites a "polyester container" without any limitations as to the type or configuration of the container. Similarly, the regeneration processes recited by the '898 and '435 patents are the generic steps of crushing a container with a heat-shrinkable polyester film and applying a thermal treatment to the resulting flakes. Instead, the focus of the claimed advance over the prior art are the claimed heat-shrinkage, clumping fraction, and discoloration properties.

13

2.  The Claimed Properties Are Purely Result-Oriented Abstract Ideas.

"[T]o avoid ineligibility, a claim must have the specificity required to transform the claim from one claiming only a result to one claiming a way of achieving it."  *Am. Axle I*, 967 F.3d at 1296 (citations omitted).  Indeed, "'in the context of claims to results, we have explained that claims that 'simply demand[] the production of a desired result . . . without any limitation on how to produce that result' are directed to an abstract idea." *PureCircle USA Inc. v. SweeGen, Inc.*, No. 2022-1946, 2024 WL 20567, at *6 (Fed. Cir. Jan. 2, 2024) (non-precedential) (quoting *In re Killian*, 45 F.4th 1373, 1382 (Fed. Cir. 2022))).

The Federal Circuit's 2020 decision in *American Axle* is particularly instructive. The claims there recited "a method of manufacturing a driveline propshaft containing a liner designed such that its frequencies attenuate two modes of vibration simultaneously and . . . a manufacturing method to tuning liners to attenuate bending mode vibration." *Am. Axle I*, 967 F.3d at 1292-93.  Though it dealt with a different judicial exception (a natural law),[3] the court's analysis is directly on point here:

> In contrast to a number of other natural law cases, the patentee here does not even claim to have discovered a previously unknown natural law.  Instead, it defines a goal ("tuning a liner" to achieve certain types of vibration attenuation). . . . Claim 22 confers patent coverage if the attenuation goal is achieved by one skilled in the art using any method, including any method implemented by computer modeling and trial and error.  That claim 22 here merely describes a desired result is evident from the face of the claim.  The claim on its face does not identify the "particular [tuned] liners" or the "improved method" of tuning the liners to achieve the claimed result.  *No factual finding was or is required.*

---

[3] "While many of these cases involved the abstract idea category, the same principle necessarily applies in natural law cases."  *Am. Axle I*, 967 F.3d at 1297.

14

4860-1336-9778.9

*Id.* at 1293-94 (emphasis added) (citations omitted).  In rejecting the patentee's argument that the claimed invention was "complicated in practice, involving more than simple application of Hooke's law," the court explained that: "[w]hat is missing is any physical structure or steps for achieving the claimed result" and that "*[t]he focus of the claimed advance here is simply the concept of achieving that result, by whatever structures or steps happen to work*."  *Id.* at 1294-95 (emphasis added).

Similarly, in *PureCircle*, the Federal Circuit found that a limitation of "50% completion" of a chemical compound conversion process "is itself an abstract idea." 2024 WL 20567, at *5.  The claim-at-issue recited a "method for making Rebaudioside X comprising a step of converting Rebaudioside D to Rebaudioside X using a UDP-glucosyltransferase."  *Id.*  After noting that "there [was] no dispute that the conversion of steviol glycosides and Reb D to Reb [X] using UGT enzymes is a natural process" and, thus, patent ineligible, the court addressed the patentee's argument that the claim requirement that "conversion of Rebaudioside D to Rebaudioside X is at least about 50% complete" confers patent-eligibility "because the conversion of Reb D to Reb X would never reach 50% completion in nature, [the claim] is not directed to a natural phenomenon."  *Id.*  In rejecting this argument, the court explained that "[t]he problem with [this] argument is that the 50% completion is itself an abstract idea."  *Id.*  The court then held that because this limitation is "simply stat[ing] a result" and "[t]he claim does not provide any steps or give guidance as to how to achieve a 50% conversion other than the direction to use a natural enzyme," the claim is patent ineligible.  *Id.* at *6.

Here, like the claims found ineligible in *American Axle* and *PureCircle*, the Asserted Claims are directed to particular results—the specified heat shrinkage, clumping fraction, and discoloration properties—irrespective of *how* the claimed heat-shrinkable polyester film or regeneration process achieves such properties.  Heat shrinkage refers to the amount of change in the size of a film in a particular direction at a particular temperature.  (*See* ECF 1-2 Ex. 2, 6:19-27.)  Clumping fraction refers to a measurement of the amount of entanglement of flakes from the heat-shrinkable polyester film and the

polyester container. (*See* ECF 1-6 Ex. 6, 8:36-42.) Discoloration refers to how much the color of a heat-shrinkage polyester film has changed during a drying process. (*See* ECF 1-4 Ex. 4, 7:62-8:7.) These properties do not refer to a particular process, machine, manufacture, or composition of matter—the four statutory categories of patent-eligible subject matter. Instead, each of these properties is a functional result of the underlying composition and process used—which makes them abstract ideas.

It would be one thing if the Asserted Claims recited a new polyester film composition or manufacturing process that achieved the claimed heat-shrinkage, clumping fraction, and discoloration properties. For example, if the claims recited a novel film that relied on chemicals not used in the prior art, the patent-eligibility question here would be analyzed differently. But here, none of the Asserted Claims identify the specific film compositions, polyester containers, or regeneration processes needed to achieve the claimed properties. *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 966 F.3d 1347, 1349 (Fed. Cir. 2020) (denying rehearing *en banc*) ("*Am. Axle II*") ("The inventors here may well have invented a specific means of achieving the claimed result, but they chose not to include such means in the claims we hold ineligible."). Thus, by not limiting the Asserted Claims to specific non-conventional compositions or processes, the focus of the claims is on the claimed heat-shrinkage, clumping fraction, and discoloration properties.

3. <u>Unclaimed Technical Details Found in the Specifications of the Patents-in-Suit Cannot Confer Patent Eligibility.</u>

To the extent SKM argues that the disclosed embodiments are relevant to patent eligibility, such arguments should be rejected. In *American Axle I*, the Federal Circuit explained that "we have repeatedly held that features that are not claimed are irrelevant as to step 1 or step 2 of the *Mayo/Alice* analysis." 967 F.3d at 1293.

Any argument to the contrary confuses the "how" requirement of §101 with the "how" requirement of enablement under §112. As *American Axle I* explains, there are "two different 'how' requirements in patent law." 967 F.3d at 1302. The first "how"

16

requirement, relevant to patent-eligibility under §101, "is that the claim itself . . . must go beyond stating a functional result; it must identify 'how' that functional result is achieved by limiting the claim scope to structures specified at some level of concreteness . . . ." *Id.* (emphasis added).  The second "how" requirement is that "once the required concrete physical structures or actions are set out in the claim, the specification must set forth enough information for a relevant skilled artisan to be able to make and use the claimed structures or perform the claimed actions" which "is the enablement requirement" of §112.  *Id.*  Here, as described above, the Asserted Claims merely state a functional result without limiting the claim scope to concrete structures or processes.

**B.    *Mayo/Alice* Step Two: The Asserted Claims Recite Only Conventional Heat-Shrinkable Polyester Films and Regeneration Processes Without Providing an Inventive Concept.**

Step two, "the search for an inventive concept," requires the court to "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  *ChargePoint*, 920 F.3d at 773 (quoting *Alice*, 573 U.S. at 217).  "Where a claim is directed to an abstract idea, *the claim* must include 'additional features' to ensure that *the [claim]* is more than a drafting effort designed to monopolize the [abstract idea].'"  *Id.* (quoting *Alice*, 573 U.S. at 221) (emphasis added).  "These additional features cannot simply be 'well-understood, routine, conventional activit[ies] previously known to the industry.'"  *Id.* (quoting *Alice*, 573 U.S. at 221).  "[T]he inventive concept must be 'sufficient to ensure that the patent in practice amounts to significantly more' than a patent on the abstract idea."  *Id.* (quoting *Alice*, 573 U.S. at 221).

Here, the Patents-in-Suit admit that the additional claim elements were known and conventional.  As discussed above, the heat-shrinkable polyester films, regeneration processes, and polyester containers recited in the claims are entirely conventional.  Thus, there is no inventive concept that would preclude dismissing this case under §101.

The lack of an "inventive concept" in the claims is confirmed by the fact that the

17

only possible inventive concepts of the Asserted Claims are the claimed properties themselves;[4] however, it is inappropriate to point to the abstract idea as supplying the inventive concept in *Mayo/Alice* step two.  *See ChargePoint*, 920 F.3d at 774 ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.") (quotation marks omitted).  As explained above, the Asserted Claims cover generic heat-shrinkable polyester films, polyester containers, and regeneration processes that have the claimed properties.  *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) (rejecting argument that "the claims set forth a unique solution to a problem" because the claims did "not recite particular features to yield these advantages").  Indeed, "[t]he real inventive work lies in figuring out how to design" heat-shrinkable polyester films and regeneration processes that can achieve the claimed properties.  *Am. Axle I*, 967 F.3d at 1299.

## V.   THE COMPLAINT FAILS TO ALLEGE INFRINGEMENT OF THE '435, '691, AND '898 PATENTS

"[A] plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements."  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).  Rather, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."  *Id.*

Unlike the Asserted Claims of the '865, '047, '062, and '897 patents—each of which claims a heat-shrinkable polyester film—the Asserted Claim of the '435 patent claims a "plastic container" and the Asserted Claims of the '691 and '898 patents claim

---

[4] While "patentees who adequately allege their claims contain inventive concepts survive a §101 eligibility analysis under Rule 12(b)(6)," *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126-27 (Fed. Cir. 2018), the Complaint does not allege that any Asserted Claim contains an inventive concept.

4860-1336-9778.9

"[a] process for regenerating a polyester container."    Thus, to state a claim for infringement of the Asserted Claim of the '435 patent, the Complaint must contain factual allegations showing it is plausible that Defendants make, use, sell, offer for sale, or import polyester containers (direct infringement) or induce or contribute to third-parties doing so (indirect infringement).    And to state a claim for infringement of the Asserted Claims of the '691 and '898 patents, the Complaint must contain factual allegations showing it is plausible that Defendants use a process for regenerating polyester containers (direct infringement) or induce or contribute to third-parties using such a process (indirect infringement).

### A.    The Complaint Alleges that Third Parties Are the Only Direct Infringers of the '435, '691, and '898 Patents.

While the Complaint baldly claims that "Defendants have directly infringed" the Asserted Claims of the '435, '691, and '898 patent by "making, using, selling, offering for sale, and/or importing one or more of the Accused Heat-Shrinkable Film Products" (ECF 1, ¶¶59, 83, 129), the Accused Heat-Shrinkable Products are not "plastic containers" or "[a] process for regenerating a polyester container."    Instead of alleging facts from which it can be inferred that either Defendant makes, uses, sells, or imports plastic containers or regenerates polyester containers, the Complaint alleges only that "Defendants actively encourage, aid, and instruct" "their customers to manufacture plastic containers" ('435 patent), "their customers to utilize a process for regenerating a polyester container" ('691 patent), and "a process for regenerating a polyester container" ('898 patent).    (ECF 1-10 Ex. 10; ECF 1-11 Ex. 11; ECF 1-14 Ex. 14.)    Nowhere does the Complaint allege that Defendants manufacture plastic containers or use a process for regenerating a polyester container.    Thus, because the Complaint alleges only that Defendants "encourage, aid, and instruct" others to make, use, sell, or import plastic containers or use the claimed process for regenerating a polyester container, the Complaint fails to state a claim of direct infringement of the Asserted Claims of the '435, '691, and '898 patents and Counts III, VI, and XI should be dismissed.

19

**B.    The Complaint Does Not Allege Sufficient Facts About the Purported Third-Party Direct Infringement of the '435, '691, and '898 Patents.**

Infringement of the Asserted Claims of the '435, '691, and '898 patents requires a plastic container that includes both a heat-shrinkable polyester film and a polyester container ('435 patent) or a process for regenerating a polyester container with a heat-shrinkable polyester film ('691 and '898 patents).    Despite this, the Complaint's allegations address only the heat-shrinkable polyester films and fail to allege any facts about the allegedly infringing plastic containers, polyester containers, and regeneration processes.    In particular, the Complaint does not plead the existence of a specific customer that infringes these claims or "plead[] facts sufficient to allow an inference that at least one" such customer exists.    *In re Bill of Lading Transmission & Processing Sys. Pat. Lit.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012).

Instead, the Complaint at-most alleges that the accused films *could* be used in a plastic container or process for regenerating a polyester container that meets the Asserted Claims of the '435, '691, and '898 patents.    The claim charts for the '435, '691, and '898 patents allege that "[t]he 42SH film is advertised as APR[5] certified," "APR certification requires 1% or less clumping," and/or "APR certification requires thermal treatment of PET flakes."    (ECF 1-10 Ex. 10, 4; ECF 1-11 Ex. 11, 3-4; ECF 1-14 Ex. 14, 4.)  However, such allegations do not identify a single one of Defendants' customers that manufacture plastic containers or use regeneration processes that meet the APR certifications.    Nor do such allegations allow for the inference that at least one of Defendants' customers are manufacturing such plastic containers or using such regeneration processes.    *See Irori Technologies, Inc. v. Luminex Corp.*, No. 13-CV-2647, 2014 WL 769435, at *4 (S.D. Cal. Feb. 25, 2014) (granting motion to dismiss where plaintiff failed to "plead[] facts sufficient to allow an inference that at least one direct infringer exists").

---

[5] APR refers to the Association of Plastic Recyclers.

20

Thus, Counts III-VIII and XI-XIII should be dismissed.

**C.     The Complaint Fails to Allege that Either Defendant Induced Infringement of the '435, '691, and '898 Patents.**

To state a claim for induced infringement, a complaint "must contain facts plausibly showing that [the defendant] *specifically intended* [its] customers to infringe the [patents-in-suit] and knew that the customer's acts constituted infringement." *U.S. Ethernet Innovations, LLC v. Netgear, Inc.*, No. 13-2262, 2013 WL 4112601, at *3 (N.D. Cal. Aug. 12, 2013). However, beyond the conclusory allegation that "[u]pon information and belief," either Defendant "actively encourage[s], aid[s], and instruct[s]" its customers to perform the claim limitations, the Complaint does not contain any allegations explaining how either Defendant encourages, aids, or instructs such activities. For example, the Complaint does not allege that Defendants encourage their customers to use a particular type of polyester container or to regenerate polyester containers using the claimed steps. Thus, the allegations of induced infringement should be dismissed. *See Pulse Elecs. v. U.D. Elec. Corp.*, No. 18-cv-0373, 2020 WL 3791660 at *2 (S.D. Cal. July 6, 2020) (dismissing induced infringement allegation where "[o]ther than its own conclusory allegations, which the Court need not assume true, the Complaint does not allege how Defendant intended to encourage others to infringe Pulse's patents").

**D.     The Complaint Fails to Allege that Defendants Contributorily Infringe the '435, '691, and '898 Patents.**

To state a claim for contributory infringement, a plaintiff must "allege that the accused products are especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." *Superior Indus., LLC v. Thor Global Entesr. Ltd.*, 700 F.3d 1287, 1296 (Fed. Cir. 2012). However, beyond the conclusory allegation that "[t]he Accused Heat-Shrinkable Film Products . . . are especially made and adapted for use as packaging material" and "are not suitable for any non-infringing use," (ECF 1, ¶¶77, 101, 147), the Complaint does not plead any facts showing that the accused films "are especially made

21

4860-1336-9778.9

or especially adapted for use" with infringing containers or regeneration processes, or that the films lack non-infringing uses.  The Complaint does not plead any facts showing how the accused films are especially made or adapted to be used as a packaging material that is needed to meet the Asserted Claims of the '435, '691, and '898 patents.  *See Discflo Corp. v. American Process Equip., Inc.*, No. 11cv00476, 2011 WL 6888542, at *4 (S.D. Cal. Dec. 29, 2011) (dismissing contributory infringement allegation where "Plaintiff [] failed to state in any way how any products manufactured by Defendants are components that were 'especially made or especially adapted' to be used by a third party in assembling a final product that infringes . . . .").  Similarly, the Complaint does not plead facts supporting the inference that the accused films are not used in non-infringing applications such as in plastic containers and regeneration processes that fall outside the scope of the Asserted Claims of the '435, '691, and '898 patents.  *See Sonos, Inc. v. Google LLC*, 591 F.Supp.3d 638, 649 (N.D. Cal. 2022) (dismissing contributory infringement allegations that "failed to properly allege there are no substantial noninfringing uses for the accused products").  Thus, for these additional reasons, Counts V, VIII, and XIII should be dismissed.

## VI.   **CONCLUSION**

For the foregoing reasons, Defendants' Motion should be granted.

MOTION TO DISMISS
CASE NO. 2:23-CV-10322-JAK-ADS

Dated: April 24, 2024

Respectfully submitted,

**FOLEY & LARDNER LLP**

*/s/ Jean-Paul Ciardullo*
Jean-Paul Ciardullo
Michael D. Kaminski
Liane M. Peterson
Bradley D. Roush

*Attorneys for Defendants*
*Far Eastern New Century Corporation and*
*Multi-Plastics, Inc.*

## WORD COUNT CERTIFICATION

I certify that, according to Microsoft Word's Word Count function, the foregoing Memorandum is fewer than 7,000 words.

*/s/ Jean-Paul Ciardullo*
Jean-Paul Ciardullo

4860-1336-9778.9